It looks like everybody is ready to go, so we'll call it 23-1309, United States v. Jani. Good morning, Your Honors, and may it please the Court. My name is Kathleen Shen, and I represent the appellate, Mr. Dhruv Jani. This Court has long held that in order to be a manager or supervisor under Section 3B.1.1 of the Guidelines, a defendant must exercise decision-making authority or control over a subordinate. It's not enough that the defendant was important or essential to the criminal activity, and it's also not enough that the defendant is merely relaying information on behalf of others. Unless the defendant actually has the authority over subordinates that the Guideline requires, he is not a manager or supervisor. The District Court's statements and findings show that he applied the enhancement without requiring that decision-making authority or control in this case. Recall that Mr. Jani had argued that he was not a manager or supervisor because he, in fact, had no decision-making authority or control over Whitty and Henderson. Rather, Mr. Jani contended that he had merely translated Mike's orders from Gujarati to English. Where was the, where was Jani located? Mr. Jani was located. Geographically. He was in Colorado with Whitty and Henderson, and his position at sentencing was that all three of he, Whitty, and Henderson were runners, and Mr. Jani was just the one who received the instructions. And because he spoke Gujarati, he would translate those instructions to Whitty and Henderson. Where was Mike? Mike was located, presumably, in India. In India, yeah. So, the District Court rejected the premise of that argument, concluding that even if Mr. Jani was just relaying the instructions that he had received from Mike, that he was a manager or supervisor. He says, even if I believe all of that, and I don't care if he's following orders of the change, he is still a manager or supervisors. And I think these statements, particularly in combination with the findings that he did make, show that he had erroneously concluded that the manager or supervisor role did not require decision-making authority or control, but could be applied based on this translation or mouthpiece function alone. Counsel, let me ask you this, because this was a sentencing matter, isn't that correct? Yes. And what's the standard that the trial court applies? And I thought it was a preponderance of the evidence in the sentencing matter. Isn't that correct? Yes. And so your argument solely is that based upon the evidence that was presented at sentencing, your client was not a manager or supervisor. Is that where you're coming from? That's not exactly correct, Your Honor. Our position is that the district court applied the wrong legal standard, and that this, you can see this by the way that he rejected our position. He says, even if I accept he's just a translator, he's still a manager or supervisor. And recall, our specific argument is, he's not a manager or supervisor. He doesn't exercise decision-making authority or control. He is just translating. Excuse me, counsel. I need you to slow down. I can't hear you. Oh, I apologize. You're talking, but run that by me again. I think this, what you're arguing, is important, and I need to be sure and graph it.  So our specific argument, and you can see this, I believe, in pages 96 to 97 of Volume 2, and this is our sentencing objection. Our objection was that Mr. Johnny was not a manager or supervisor because he lacked decision-making authority or control, that he did not have that authority over Whitty and Henderson, and rather, he was just translating orders from Mike. And, you know, I think the district court just rejected the premise of that. He says, even if that's true, you are still a manager or supervisor because you recruited, because you gave them IDs, because you traveled with them, and because you gave them instructions. And I think this instructions is really the one part I want to focus on a little bit here, right? Because, of course, sometimes- Is that a fact question that we need to defer to? In this case, I think that the district court is making a legal error just from the way he's explaining his findings. He's saying, even if you're just translating, I think that makes you a manager or supervisor. And so our view is that there's this legal error, and that because the district court's applying the wrong legal standard, his factual findings are kind of insufficient. It's, you know, this analogy I thought of is, like, if you have a beaker, and the legal standard is the line on the beaker, and then you've got to fill the beaker up to the line to show that the guideline applies, I think the district court drew the line in the wrong place. But we can also see from his factual findings that he wasn't using the right legal standard. And I really want to focus on instruction, because I think that's the part where, you know, on first blush, you might think, oh, if you're giving instructions to someone, maybe you are their supervisor. And I think that can be true sometimes. But in this case, Mr. Johnny specifically said he wasn't giving them orders based on his own authority. He was just translating or relaying the orders from Mike. And, you know, the example I can think of is, you know, if my boss comes to me and he says, Katie, I've got two new appeals from the Tenth Circuit. You take Mr. Johnny's case, and the other one is going to Josh. You let Josh know he's taking the other case. When I tell Josh that he is taking the case, that's not an assignment coming from me. I am not Josh's supervisor merely because I am relaying this instruction. And I think because that was our position, and the district court never found otherwise, you can, his finding and his application of the guideline was clearly erroneous, whether you think it's clear error because it's based on the application of a wrong legal standard, or if you just say this is a legal error, we review de novo. Whichever way you approach that, I think that the finding was erroneous, and that's reversible and requires remand to the district court. I have one more question.  Of course. But I noticed that there seems to be a difference of opinion between you and your opposing counsel as to our standard, whether we're here under plain error. You're arguing I believe it's not plain error. Is that correct? Yes, Your Honor. My view of this is that we're raising exactly the same argument on appeal that we raised below. Below, we argue to the district court, Mr. Johnny is not a manager or supervisor because he did not exercise decision-making authority or control. He was just the translator. So the same argument you're making to us is the same argument you made below. Yes, and that is sufficient to preserve the claim. I don't, there was no additional requirement after the district court overruled our objection to say, no, no, no, you should have followed the legal standard. I think this is sufficient both just from first principles. It's the same argument on appeal. And again, if you look at Lopez-Avila or the court's recent unpublished decision in Morrell, once you put that standard in front of the judge, you don't have to raise it again afterwards. So, you know, unless this court has further questions, I'd like to reserve the remainder of my time for rebuttal. Thank you.  May it please the court. Jess McKeel for the United States. Your Honors, I want to start with the plain error point that was just brought up by Judge Baldock. This was not the same argument that was raised below. And I want to be very clear about that. Counsel pointed to page 96 of their objections and actually this whole notion that you have to be a decision maker. That wasn't raised. Page 96 said that Johnny had no control or authority over his subordinates, no actual control or authority. That's that is different than this whole notion that there has to be decision making. And furthermore, I think the Bush case that came out in 2022 is on all fours with this. In fact, deals with the same enhancement, 3B1.1B. There, I would point out that this is the opening brief said that the court skipped over making any finding of control over another participant. It's basically what we've got here, that the court set aside discretion, skipped over a necessary prong of the legal standard. But then when this whole forfeiture plain error was pointed out in the answer brief, the reply was, well, we did enough. We objected to the central finding that the court was required to make and that the record didn't support the enhancement. And this court said, no, that's not enough. The court said, you know, you're saying that the district court didn't apply the correct legal standard, that it skipped over something. You needed to timely object. And I think there's a there's a good reason for that here, because the parties are debating over what did the court mean when it said, I'm setting aside discretion? You know, the defense is saying, well, I'm setting aside the whole legal standard. I don't think that's a fair reading of the transcript. What he said was, you know, whether Johnny was operating the call centers in India or whether he's handing things down that Mike told him, I don't need to get into that. You know, I'm going to set aside those things when he's talking about discretion. So if if there was a concern about, wait, are you setting aside the whole legal standard? That's the moment to say something. Let him clear it up. But there was no objection. And I think Bush controls on that point. Morrell is also very different. You know, Morrell talks about it's kind of the the Pulsifer scenario of that safety valve. Does and mean or? And the government made the exact same argument in the district court that it made on appeal. You have to show all three factors under that safety valve to qualify. And in the interim between the district court's decision and the appeal, Pulsifer came down and cleared that up. So, yeah, it's the exact same argument. So there'd be no need to re-raise it. This is this is different. This was far more of an evidentiary concern as to the as to the standard rather than what is the standard. And I think jumping now to what is the standard, again, bearing in mind, I believe that this is under plain error review. Judge Baldock, your opinion in Hunsaker set out three different prongs. It said decision making authority, control or organizational authority. And Hunsaker didn't come up with that out of thin air. That's been the law for 34 years. Roberts actually used even more on point language in 1990. It said if you have control over subordinate or and thinking about in terms of Johnny, you're responsible for organizing others for the purpose of committing an offense. What is Johnny? Johnny is the one that's responsible for organizing Whitty and Henderson. As Judge Tempfish, you pointed out, Mike is 8000 miles away. He might be saying, here's when you need to pick up the package. Here's what the package contains. Please go buy these money orders, deposit them into these accounts. There's a lot that then needs to be done to execute those orders, to implement those orders. And I think that's why the district court's military analogy seems spot on. And, you know, this would not be the first time, actually, a military analogy has been used in this context. I would note that it has come up in subsection A concerning leaders and organizers. An analogy was made to a general overseeing his troops. OK, well, what about one step below? Now we're talking about middle managers. And so that's where the district court said, you know, the lieutenant tells the sergeant, OK, I need you to go take that hill. Sergeant gathers up the privates and said, men, we're going to go take that hill. So is the sergeant not a manager? Of course he is. This is exactly what 3B1.1 was designed to capture. It's relative responsibility. That's the whole arc of this enhancement. Now, Did Johnny really have, if we focus on decision, a decision maker, did he have any decision making capacity or? Your Honor, he had to have some decision making. He might be the foot soldier. He's one step above the foot soldier. And the district court made findings to that effect. The district court made findings that were unobjected to both below and on appeal about hierarchy. The district court said these guys were mopes. Johnny was not. And in fact, the defense responded fair. That's on page 138 of the record three, record volume three. Now, there may be different levels between those two foot soldiers. He said Henderson was probably more mopey than witty. But the fact is, is India is not going to trust some mope with tens of thousands of dollars, ultimately amounting to a million plus that elderly folks were scammed out of. And, you know, taking it even one step further, the district court said, Witty and Henderson are not on the same level as Johnny. And the defense said, I accept that Johnny is not witty. They were money runners, according to the district court. He was a domestic manager. And it clarified why he's not just a regular old money runner. He's got the contacts in India. He communicated with Mike regularly. He's the one going to California on these more significant runs. And also, you know, I want to take a step back. And, you know, when we're talking about the standard, too, about whether organizing, you know, let's look at actually what the district court said. District court said he recruits them. Well, for starters, seven circuits would say full stop there. That's enough. And that makes sense. You know, you think about what the way the First Circuit characterized it, demonstration of individual authority necessary to bring someone into the fold. You are now one step above that low run. You are under subsection B. You are a manager. You are a supervisor. And those terms are meant to be liberally construed in the first place. That's what Hurd said in the Eighth Circuit. But I would strongly encourage this court to look at the Castillo-Lugo case cited in the government's brief. Footnote 8 outlines seven different circuits that said recruitment's enough. But let's look past that. He recruits. But was it just recruiting? Did he just solicit them and say, hey, you guys should really come on board? Is this really analogous to the defense's version in their brief of, oh, this is just a friend saying, come join me at the warehouse? No, this is actually more akin to hiring. This is not just soliciting or recruiting. This is hiring. He's the one that brings them into the fold. He's the one that doles out the payments. He's the one that does the cut. And in fact, one piece of evidence that I would really like this court to look at is Record Volume 2, page 63. This is a text exchange that Mr. Witte had. And here, this is very clear about the importance of money. And I think this fundamentally shows control. He's talking with a friend and said, you know, bear in mind this is about six months into this conspiracy. And he's, you know, less mopey than Henderson. So India's starting to trust him a little bit more. You read this text exchange, it's clear that Johnny's now starting to push back against India a little bit. He doesn't want to go to California as much. And so what Mr. Witte says is, you know, Cal, who is Johnny, if you look at paragraph 19 of the PSR, Cal and Johnny are one and the same person. He said, Cal wouldn't let them send the packages to California so I could pick them up. They also wanted me to take money from Colorado that we had collected, and he wouldn't let that happen without him going along. So Cal leaves me with no money and no work. Cal really screwed me, is what this text exchange says. So who's got control? So sure, Mike, 8,000 miles away, absolutely has control. But you know what else? Johnny's got control. Johnny has decision-making and control. Over Witte and Henderson. Can I just stop you there? Because you just used the term decision-making. But I'm wondering, can you help me understand the distinction between decision-making and organizational authority? Do you think there is a difference? I mean, you started out by saying there's three separate things. So can you help me understand that distinction? Yeah, I think for starters, there's kind of different formulations of the tests that have been floated around. Whether it's Bacchus said any direction will suffice. And then eventually we start to get the notion of decision-making. And that shows up in Roberts. Roberts also does clarify that it's decision-making authority or control. It first looks at, you know, was there any evidence that this person had decision-making authority over subordinates? It says, well, we don't see it. But then it says we also don't see any form of control. And I think this goes back to Hunsaker, which shows that these are different buckets. Now, there has to be some measure of decision-making if you are the one saying, I'm going to organize these people. If you're the sergeant saying, all right, men, line up, you know, there's some decision-making inherent in that. Control, organization, authority, these terms all kind of interplay with one another. And frankly, the same evidence can check a lot of these different boxes. And here it did. What we've got is, you know, he's the gatekeeper, first of all, to the money. He's the one doling out the funds. He's the one apparently preventing Witte from making any money to survive when he chooses. That's a decision. He's also the one that's dictating the flow of information. Now, counsel says, well, maybe that, you know, those were instructions coming from Mike. That specific allegation is not ever made. Aside from this omnibus objection of, oh, every single thing that I did was just because Mike told me to. Well, Johnny's not a robot. Johnny has agency. He's the one implementing and executing Mike's instructions. So he's, you know, they ask him, where are these funds coming from? What are we doing? Why do we need fake IDs? Well, you don't need to know. He tells one of them. The other one, he gives a slightly different story. Certainly no evidence that Mike was dictating that. So there is some decision-making happening here. You know, Johnny is also the one driving Henderson. Mike's not in that car. So I think, you know, I'd like to think that some measure of decision-making happens when you're driving a vehicle. So it doesn't have to be a lot. And that's, I think, going back to what Bacchus said. Not much is required. Any form of direction will suffice. And, you know, in addition to this whole legal standard thing, which, again, I submit is under the plain error, we've also got this question of what did the district court mean when it said discretion? And I think that's a very clear reason that we can't say that any error was obvious, which is necessary under prong two. Certainly the word discretion does not appear in 3B1.1b. It does not appear anywhere in this court's case law interpreting that that provision. It does not appear in the application note. And the application note is significant. There's seven factors listed in that note to determine whether somebody is or is not a manager or supervisor. The apt case said those seven apply. Well, if you distill the defense's argument down, only two of them really matter. Decision-making, control. Well, what is recruitment? Recruitment is evidence of decision-making and control. All seven factors matter. They have to. So unless, you know, we're prepared to sort of set aside apt and change what those seven factors mean in the application note, unless we're prepared to take the pen and strike through organizational authority and Hunsaker, and unless we're prepared to put words in the district court's mouth when it said discretion, I don't see how we get to plain error. So unless this court has any further questions, I would ask for the judgment to be affirmed. Thank you, Counsel. Thank you, Your Honor. Your Honor, I'd like to start with the government's argument regarding the substantive legal standard and specifically his suggestion that you can have organizational authority without decision-making authority or control. That's squarely contrary to this court's precedence, which plainly and clearly state that you cannot be a manager or supervisor unless you have decision-making authority or control. Robert says evidence of decision-making authority or control over subordinate is necessary. To conclude, the defendant was a supervisor or manager. Pena Hermosillo says the enhancement applies only when the defendant had decision-making authority or control. Albers, again, repeats the Roberts holding, Pellier, and in Hunsaker, this court reversed application of the manager-supervisor enhancement because the record lacked evidence of decision-making authority or control over subordinate necessary to a holding that the defendant was a manager or supervisor. So there's simply no authority for the government's argument that you can have something, you can be an organized or have organizational authority without decision-making authority or control. The application notes, though, for the provision, you know, they have these seven factors you look at and it doesn't say decision-making alone. It says the factor should include and boom, boom, boom, boom. And clearly he falls under some of those factors. I think this court's precedents are clear that the decision-making authority and control factors are dispositive and the other factors may be considered. But you have to have those two, absolutely. I think the best reading is that organizational authority is a kind of synonym or just another way of describing decision-making authority or control. And I kind of think that's sort of what the government was suggesting. It's hard to imagine how you could organize someone or have the authority to do so without exercising decision-making authority or control. Second, you know, the government appears to be inviting the court to look to various aspects of the PSR and the pleadings and inviting the court to make the finding that, you know, actually Mr. Johnny was a manager or supervisor based on these various allegations that appear in the record. But of course, it's not this court's role to find the facts in the first instance. Mr. Johnny specifically objected that he was just the translator, that he didn't have decision-making authority or control. And the district court never found otherwise. And so it's not, it wouldn't be appropriate for this court to do what the government suggests and conduct a sort of free-floating factual inquiry as to whether the standard is met under these circumstances. And again, you know, the government suggests or argues that we made a different, that our objection wasn't raising the same argument. And I just think that's not true. Again, I would draw this court's attention to page, pages 97, or 96 and 97 of the volume two of the record. And I'm just going to read from there. Mr. Johnny, you know, this is our argument for why he is not a manager or supervisor. He did not earn more than his co-conspirators. He did not have decision-making authority, control, or the ability to organize the money laundering activities as he saw fit. And then the final sentence, our conclusion, Mr. Johnny only relayed information, followed orders with the other two runners, but had no actual control in making the substance of those decisions, and he should not receive a role adjustment for those reasons. So the idea that we didn't raise this argument before, I think, is simply false and not supported by the record. And even if this claim was on plain error, I think the error is plain. Of course, the law is plain. As I've just walked through, this court has repeatedly said decision-making authority and control are required in order to qualify for this enhancement. And with respect to the record, you know, I think if you were looking just at this one statement about discretion itself, you know, maybe the government would have a point. But the district court is responding directly to our objection in which we argue that Mr. Johnny was not a manager or supervisor because he lacked decision-making authority or control and was just a translator. And so when the district court says, even if I believed all that, you're still a manager or supervisor, I think it's clear that the district court is saying he rejects the notion that decision-making authority or control is required and that he believes that the enhancement can be applied even in the absence of those things. And that is plain error under this court's precedence. And so for all those reasons, whether you consider the claim to be preserved or not, the application of the enhancement was erroneous and this court should vacate the sentence and remand for resentencing. Thank you. Thank you, counsel. I appreciate your arguments. You are excused and the case is submitted.